**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **WILLIAM T. MASON III, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 26-00824** |
| **EAGLE, INC., ET AL.** | **SECTION: "T" (1)** |

## ORDER AND REASONS

Before the Court is a Motion to Remand (R. Doc. 6) filed by Plaintiffs, William T. Mason III, Kim Mason Avocato, Myrtis Sanders Mason, Keith L. Mason, Sr., and Vicki L. Mason-Palmer, individually, and as surviving heirs of Decedent, William T. Mason, Jr. (collectively, "Plaintiffs"). Plaintiffs contend that defendant Boland Marine and Manufacturing Company, LLC ("Boland" or "Defendant") failed to satisfy the requirements for federal officer removal under 28 U.S.C. § 1442(a)(1) and request that this Court remand the instant matter to the Civil District Court for the Parish of Orleans, State of Louisiana. R. Doc. 6, p. 1; R. Doc. 6-1, pp. 5-6. Boland opposes Plaintiffs' Motion, arguing instead that the record sufficiently establishes the necessary elements for federal officer removal. R. Doc. 17, pp. 1-2. Plaintiffs have filed a reply in support of their Motion, R. Doc. 24, and Boland filed a sur-reply after seeking leave of Court to do so, R. Docs. 27, 28, 29. Having reviewed the record, the briefs, and the applicable law, the Court will **DENY** Plaintiffs' Motion for the following reasons.

## I. BACKGROUND

This is an alleged asbestos exposure case stemming from William T. Mason, Jr.'s ("Decedent") diagnosis of and subsequent death from mesothelioma, which Plaintiffs attribute to

alleged occupational exposure to asbestos, including exposure allegedly sustained during Decedent's employment with Gulf-Best Electric, Inc. while performing work at defendant Boland's shipyards. R. Doc. 1-1, p. 8; R. Doc. 6-1, p. 6. In April 1974, Boland entered a contract with the United States Navy ("the Government Contract") to perform overhaul, maintenance, and upgrade work on the USS KING ("the KING" or "the Vessel"), a decommissioned guided missile destroyer.[1] R. Doc. 17, p. 4. The parties dispute the temporal scope of Decedent's alleged asbestos exposure at Boland, particularly whether Plaintiffs' claims encompass the period during which Boland performed work on the KING. *See* R. Docs. 6, 17, 24, 29.

On November 19, 2025, following Mr. Mason's death, Plaintiffs, as surviving heirs to Decedent, filed a Petition for Damages in the Civil District Court for the Parish of Orleans, State of Louisiana, naming several premises owners, employers, and manufacturers, including Boland, as defendants. R. Doc. 1-1, pp. 3-8. On April 17, 2026, Boland filed a timely Notice of Removal, removing the action to this Court and asserting federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). R. Doc. 1, pp. 1-2. Specifically, Defendant invoked the affirmative defenses of government contractor immunity established by *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), and the federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940). *Id.* at pp. 4-10. Defendant argues that it is entitled to such defenses because its work on the USS KING was performed pursuant to a federal contract and Navy specifications governing the work and materials used. *Id.*

[1] "Boland does not possess the Government Contract and has made a Freedom of Information Act request for same if it still exists." R. Doc. 17, p. 4 n.21. Although Plaintiffs argue that Boland "has not, and seemingly cannot, produce evidence of the actual government contract" or its "precise terms and conditions," the existence and general purpose of the contract are independently reflected in *Savoy v. United States*, 469 F. Supp. 301, 301-02 (E.D. La. 1978). First built in 1955, the USS KING "was designed, owned and operated at all pertinent times as a guided-missile warfare destroyer." *Id.* at 301. The Vessel was decommissioned in 1974 "in order to be overhauled and modernized pursuant to a contract awarded on April 19, 1974 between the United States and Boland" and "arrived at Boland's shipyard on April 25, 1974." *Id.* at 301-02.

On April 27, 2026, Plaintiffs filed a timely Motion to Remand, arguing that remand is warranted because Defendant has failed to satisfy the requirements for federal officer removal. R. Doc. 6, pp. 1-2; R. Doc. 6-1, p. 5. Specifically, Plaintiffs argue that Boland cannot establish that the charged conduct is connected or associated with conduct undertaken pursuant to federal direction because Decedent's alleged asbestos exposure at Boland occurred *before* the USS KING project began. R. Doc. 6-1, pp. 5-6. Plaintiffs additionally contend that Boland has failed to establish that it acted under a federal officer's direction with respect to the KING work. *Id.* at p. 6. Boland filed a memorandum in opposition, arguing that Plaintiffs construe their Petition too narrowly and that a plain reading of the Petition and jurisdictional evidence establish a sufficient relationship between Plaintiffs' claims and Boland's federally directed work on the Vessel. R. Doc. 17, pp. 6-20. Replying in support, Plaintiffs reiterate that their claims against Boland are limited to Decedent's alleged asbestos exposure while performing electrical ship-repair work before approximately 1972. R. Doc. 24, pp. 2-7. Plaintiffs further argue that the evidence cited by Boland fails to establish a sufficient connection between the alleged exposure and Boland's later work on the KING. *Id.* at pp. 7-10.

After the briefing deadline on the Motion to Remand, Plaintiffs produced expert reports from Dr. Brent Staggs and Kenneth Garza. R. Doc. 27-1, p. 1 (citing R. Doc. 27-2, pp. 1-2). Contending that Dr. Staggs's report addresses arguments raised in Plaintiffs' Motion and reply memorandum that were not previously available within the allotted submission period, Boland sought leave of court to file a sur-reply, which the Court granted. R. Docs. 27, 28. Boland's sur-reply argues that Dr. Staggs's report further undermines Plaintiffs' proposed limitation of their claims to pre-1972 exposures because Dr. Staggs attributes Decedent's mesothelioma to asbestos exposures sustained over his "working lifetime," relies on Decedent's affidavit describing alleged

exposures through 1982, and does not limit Decedent's alleged exposure period to the years preceding the USS KING project. R. Doc. 29, pp. 1-2. Plaintiffs' Motion to Remand is now submitted to the Court.

**II. LAW and ANALYSIS**

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). While federal courts typically "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum[,]" they must resolve factual disputes in favor of retaining federal jurisdiction when evaluating removal under the federal officer removal statute. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ragusa v. Louisiana Ins. Guaranty Ass'n*, 573 F. Supp. 3d 1046, 1051 (E.D. La. Nov. 23, 2021) (citing *Schexnayder v. Huntington Ingalls, Inc.*, No. 20-775, 2020 WL 3970159, at *3 (E.D. La. July 14, 2020) (Milazzo, J.); *Louisiana v. Sparks*, 978 F.2d 226, 232 (5th Cir. 1992)).

28 U.S.C. § 1442(a)(1), the federal officer removal statute, authorizes removal of a civil action commenced in a state court against or directed to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." In the words of the Fifth Circuit, the statute "allows federal officers, and private entities assisting them, to remove cases to federal court that ordinarily would not be removable." *Martin v. LCMC Health Holdings, Inc.*, 101 F.4th 410, 414 (5th Cir. 2024) (citing *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th Cir. 2020) (en banc)). Unlike the general removal statute, the federal officer removal statute includes cases "that ordinary federal question removal would not reach[.]"

*Latiolais*, 951 F.3d at 290. "Even in situations where the parties are not diverse and no federal question is raised in the complaint, § 1442 allows a case to be removed if the federal actor asserts a federal defense." *Martin*, 101 F.4th at 414 (citing *Latiolais*, 951 F.3d at 296). To establish jurisdiction under the statute, a defendant must show: (1) it has asserted a colorable defense, (2) it is a 'person' within the meaning of the statute, (3) it has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *Latiolais*, 951 F.3d at 296 (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 396-400 (5th Cir. 1998)). While "[t]he absence of any element will defeat removal," *Martin*, 101 F.4th at 414, "the federal officer removal statute is to be broadly construed in favor of a federal forum," *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021); *see also Latiolais*, 951 F.3d at 290 (noting that the question whether to remand cases removed under the statute is weighed "without a thumb on the remand side of the scale.").

Here, the Court finds that Boland is entitled to removal under the federal officer removal statute. As an initial matter, there is no dispute that Defendant is a "person" within the meaning of the federal officer removal statute. The United States Code clearly states that, "unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. Because the context of the federal officer removal statute does not command a different result, the Fifth Circuit has repeatedly held that corporate entity defendants "qualify as 'persons' within the meaning of the Federal Officer Removal Statute." *Bartel v. Alcoa S.S. Co.*, 805 F.3d 169, 172 (5th Cir. 2015), *overruled on other grounds by Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020). *See also Latiolais*, 951 F.3d at 291 (recognizing another business defendant in asbestos litigation as "person" within meaning of statute); *Winters v. Diamond*

*Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) (holding district court did not err when it held corporate entity was "person" under § 1442(a)(1)).[2] A review of cases from other circuits demonstrates that courts routinely find this to be true.[3] Plaintiffs do not contend otherwise. *See* R. Doc. 6-1. The Court thus finds that Defendant satisfies this element of federal officer removal.

Next, Defendant has asserted at least one colorable defense. A federal defense is colorable so long as it is not "wholly insubstantial or frivolous." *Latiolais*, 951 F.3d at 297 (citation omitted). While neither the Fifth Circuit nor the Supreme Court has defined the term "colorable" in this context, the Fifth Circuit has "made clear that a defendant's federal defense need not prevail at the merits stage to warrant removal—it need only be material and non-frivolous."[4] *St. Charles Surgical Hospital, L.L.C. v. Louisiana Health Serv. & Indem. Co. (St. Charles I)*, 935 F.3d 352, 357 (5th Cir. 2019). Additionally, if a defendant asserts multiple possible federal defenses, "only one needs to be colorable for [defendant] to succeed on this factor." *See id.*

Here, Boland has asserted (1) a government contractor defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), and (2) a federal derivative sovereign immunity defense under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940). R. Doc. 17, p. 17. The *Boyle* defense may shield government contractors from liability for conduct that complies with the specifications of a federal contract, *Boyle*, 487 U.S. at 512, while the *Yearsley* doctrine provides that a federal government contractor performing at the direction and authorization of a federal

---

[2] Although *Latiolais* overruled *Winters* and *Bartel* in part, it only overruled the former causal-nexus requirement for federal officer removal as set forth in *Winters*—and applied in *Bartel*—and specifically held that the *Latiolais* defendant, Huntington Ingalls Incorporated, was a person within the meaning of the statute. *Latiolais*, 951 F.3d at 291-96.

[3] *See, e.g.*, *Ray v. Tabriz*, 110 F.4th 949, 956 (7th Cir. 2024) ("There is no indication that the definition of person in § 1442 excludes corporations, and the plaintiffs do not suggest otherwise."); *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (holding that corporate administrator of federal employee insurance plan was "person" within meaning of statute); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 n.3 (8th Cir. 2012) ("[T]he 'person' contemplated by the federal officer removal statute includes corporations.").

[4] The Fifth Circuit has reasoned that "[S]ection 1442 does not require the federal official or person acting under him to win his case before he can have it removed." *Latiolais*, 951 F.3d at 296 (internal quotations and citations omitted).

government officer is immune from suit based upon the performance of the contract, *Yearsley*, 309 U.S. at 21-23.[5] The *Boyle* defense "limits liability if '(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of equipment that were known to the supplier but not to the United States.'" *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 715 (5th Cir. 2015) (quoting *Boyle*, 487 U.S. at 512).

Here, Defendant argues that it "can assert a colorable government contractor defense because (1) the Navy established specifications, drawings, work packages, technical manuals, and change orders which governed the materials and components to be used on the USS KING subject to safety standards, including asbestos safety standards prescribed by and/or adopted by the Navy, such as OSHA; (2) Boland's work conformed to the Navy's specifications; and (3) the United States government had knowledge of the potential hazards of the products in the workplace that was superior to that of Boland." R. Doc. 17, p. 18 (citing R. Doc. 17-2 (Affidavit of William Joseph Baraldi); R. Doc. 17-4 (Deposition of Richard Lemen)). In support of the first two elements of a *Boyle* defense, Defendant points to the affidavit of William Joseph Baraldi, who acted as Boland's Assistant Program and Production Manager for the Government Contract to upgrade the USS KING. *Id.* at pp. 4, 18. Mr. Baraldi's affidavit states that, pursuant to the Government Contract, the Navy had control over the project at all times, Boland had to follow standards prescribed by the Navy, and the Navy "governed the nature, extent, and methods of all overhaul and upgrade activities and the materials used on the project." R. Doc. 17-2, p. 1. Furthermore, the affidavit

[5] *Yearsley* "is widely recognized as the origin of derivative sovereign immunity for government contractors." *Adams v. Eagle, Inc.*, No. CV 21-694, 2022 WL 4016749, at *9 (E.D. La. Sept. 2, 2022). "Unlike *Boyle*, *Yearsley* is rooted in ideas of sovereign immunity, as opposed to preemption." *Id.* at *9 n.131.

states, "The United States Navy dictated . . . [t]he safety standards, including for asbestos, that Boland had to adhere to." *Id.* at p. 2.

To support its assertion that the government's knowledge of potential hazards was superior to that of Boland, Defendant relies upon the testimony of Dr. Richard Lemen, a retired Assistant Surgeon General of the United States and frequent asbestos medical expert. R. Doc. 17, pp. 18-19. Dr. Lemen's 2014 testimony establishes that he was employed by the National Institute for Occupational Safety and Health ("NIOSH") in the early 1970's and personally participated in reviewing available scientific and medical literature concerning asbestos hazards to develop NIOSH's "Criteria for a Recommended Standard for Occupational Exposure to Asbestos," including recommendations to OSHA regarding safe levels of asbestos exposure. R. Doc. 17-4, pp. 18-35, 40-41. Dr. Lemen further testified that the United States Public Health Service had collected and reviewed scientific literature concerning asbestos since the 1930s. *Id.* at pp. 22-23. Boland argues that this testimony, together with the federal government's regulation of occupational safety dating back to the Walsh-Healey Act of 1936, 41 U.S.C. 6501 *et seq.*, demonstrates the government's extensive, if not superior, knowledge of the health hazards associated with asbestos. R. Doc. 17, pp. 18-19.

At this early stage, Defendant need not prove that its federal defense(s) will succeed on the merits; instead, it only needs to show that at least one asserted defense is material and non-frivolous to satisfy this element of jurisdiction under the federal officer removal statute. *See, e.g.*, *Latiolais*, 951 F.3d at 296-98 (holding that asserted federal defense to plaintiff's state law claims for negligent failure to warn about asbestos hazards and provide safety equipment was "colorable" where defendants offered evidence that elements of defense were satisfied). *See also Boutte v. Huntington Ingalls Inc.*, No. CV 22-3321, 2023 WL 2367438, at *2 (E.D. La. Mar. 6, 2023) ("The

bar for what constitutes a defense *colorable* is not as high as what is necessary to survive summary judgment or to prevail on the merits.") (citing *Elie v. Ameron Int'l Corp.*, 2020 WL 2554317, at *2 (E.D. La. May 20, 2020)). Because the evidence offered is sufficient to render Boland's asserted *Boyle* defense material and nonfrivolous, the Court finds Defendant has satisfied that requirement here.

Having found Defendant has asserted at least one colorable federal defense, the Court need not determine whether Defendant's additional defense raised under *Yearsley* would independently satisfy this element. *See St. Charles I*, 935 F.3d at 357. Additionally, the Court does not speculate on what further evidence may shed light on the merits of Defendant's *Boyle* and *Yearsley* defenses asserted in this motion. It concludes only that, for purposes of removal jurisdiction, Defendant has satisfied its burden of asserting a colorable federal defense.

Third, the Court finds Defendant satisfies the element of acting "under" or "pursuant to" a federal officer's directions. "To satisfy the 'pursuant to' requirement, a private actor must go beyond mere compliance with the law and instead help the government 'fulfill other basic governmental tasks.'" *Martin*, 101 F.4th at 414-15 (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 153 (2007)). The Fifth Circuit has clarified that "acting pursuant to a federal officer's directions means that the relationship between the government and the private entity extends beyond a regulator/regulated relationship and will typically involve a contractual agreement or agency relationship." *Id.* at 415 (citing *Watson*, 551 U.S. at 156-57). Courts have upheld removal under the statute in cases that "involve relationships where the government has delegated legal authority to the private entity." *Id.*; *see also Latiolais*, 951 F.3d at 289 (where former employee sued his employer, a federal contractor, for injuries sustained while performing work for the Navy); *St. Charles Surgical Hosp. v. La. Health Serv. & Indem. Co. (St. Charles II)*, 990 F.3d 447,

452 (5th Cir. 2021) (where insurance company contracted with federal government and government exercised a strong level of guidance and control over company); *Butler v. Coast Electric Power Ass'n*, 926 F.3d 190, 201 (5th Cir. 2019) (where private-entity defendants were "instrumentalities" of federal government that acted under federal agency's direction with a shared goal). If a defendant "cannot show that its relationship with the government involved anything more than regulation," then the "pursuant to" element is not satisfied. *See, e.g.*, *Martin*, 101 F.4th at 415. Stated differently, the relationship must not be "too attenuated to show any delegation of legal authority." *Id.* at 416. Additionally, the Fifth Circuit has recently stated,

> We construe the "acting under" requirement broadly. A removing defendant need not prove that its conduct was precisely dictated by a federal officer's directive. Instead, the "acting under" inquiry examines the *relationship* between the removing party and the relevant federal officer. A relationship is sufficiently close if the federal officer exercises subjection, guidance, or control over the removing party and that party is assisting or helping carry out a federal officer's duties, as opposed merely to *complying* with the law. When a contractor helps the Government perform a job that, in the absence of a contract, the Government itself would have had to perform, and that relationship involves detailed regulation, monitoring, or supervision, the private contractor is "acting under" a federal officer's direction.

*Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 347-48 (5th Cir. 2024) (emphasis in original) (internal ellipses, quotation marks, and citations omitted). For example, in *Wilde v. Huntington Ingalls, Inc.*, the Fifth Circuit held that a defendant acted pursuant to a federal officer's direction when it built ships that the government would otherwise have to build itself. *Wilde*, 616 F. App'x at 713.

Here, Defendant contracted with the United States Navy to overhaul, maintain, and modernize the USS KING. *E.g.*, R. Doc. 17-2, p. 1. *See also Savoy v. United States*, 469 F. Supp. 301, 301-02 (E.D. La. 1978) ("In April 1974, the [USS KING] was decommissioned in order to be overhauled and modernized pursuant to a contract awarded on April 19, 1974 between the United States and Boland Marine and Manufacturing Co., Inc."). The record reflects that the Navy

dictated the systems and components to be repaired, replaced, or upgraded; the materials and components to be used; the work procedures and sequencing; testing and acceptance standards; and applicable safety requirements. R. Doc. 17-2, pp. 1-2. Navy personnel also regularly oversaw, inspected, reviewed, and approved Boland's work. *Id.* at p. 2. Moreover, like the ships built by the defendant in *Wilde*, the KING would have had to have been restored by the government had Boland not performed the work pursuant to the Government Contract. Accordingly, Defendant satisfies the "pursuant to" element of federal officer removal.

Fourth, Defendant has demonstrated that the conduct challenged by Plaintiffs is connected or associated with acts taken pursuant to a federal officer's directions. To satisfy this final element, a defendant must demonstrate that the charged conduct is "for or relating to" an act under color of federal office. *Chevron U.S.A., Inc. v. Plaquemines Par.*, 146 S. Ct. 1052, 1060 (2026); *Latiolais*, 951 F.3d at 296. The Supreme Court recently clarified that the phrase "relating to" "sweeps broadly" and does not require the defendant to show a "strict causal relationship" between the challenged conduct and the defendant's federal duties. *Chevron*, 146 S. Ct. at 1060-61. Still, this relationship must be more than merely "tenuous, remote, or peripheral." *Id.* at 1061. The defendant must "plausibly allege[] a close relationship between its challenged conduct and the performance of federal duties" to satisfy this element. *See id.* To determine whether that relationship exists, courts are instructed to "consider the claims asserted in the state-court petition as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). Although "information submitted after removal may be considered in examining the jurisdictional facts as of removal," such material may not be used to alter the claims asserted in the operative

pleading in an attempt to defeat jurisdiction. *See Cavallini*, 44 F.3d at 264-65 (noting that "[w]ithout such a rule, disposition of the issue would never be final").

Here, Plaintiffs contend that the "for or relating to" requirement is not satisfied because the conduct giving rise to Decedent's alleged asbestos exposure at Boland occurred while Decedent worked as an electrician or electrical mechanic aboard vessels before approximately 1972, whereas Boland's work on the USS KING did not begin until 1974. R. Doc. 24, pp. 7-10. Plaintiffs' argument relies on the testimony of Jack Pregeant, who testified that Decedent had moved into an office position by the early 1970s and was "definitely in the office when we started the KING." R. Doc. 6-1, pp. 6-7. Therefore, Plaintiffs argue, Boland's federally directed work aboard the Vessel is temporally disconnected from the asbestos exposure for which they seek recovery. R. Doc. 24, pp. 9-10.

Boland responds that Plaintiffs construe the allegations of their state-court Petition more narrowly than its language permits. R. Doc. 17, pp. 7-10; R. Doc. 29, pp. 1-3. In support, Defendant emphasizes that the Petition includes broad allegations that Decedent was exposed to asbestos during ship repair work at Boland's shipyard and covers conduct that allegedly occurred between 1957 and 1979. *Id.* (citing R. Doc. 1-1, p. 8-10). Boland additionally highlights the inconsistency between Pregeant's testimony that Decedent moved to an office job "in the early 1970s" and Decedent's attestation that he became superintendent for Gulf-Best and stopped working aboard vessels in 1982, *id.* at p. 9 (citing R. Docs. 6-3, 6-7), and it contends that "Plaintiffs' allegations put Decedent on Boland ships until 1979." *Id.* (citing R. Docs. 1-1, 6-3, 6-7). Therefore, Boland argues, the claims pleaded against it encompass the KING project, which occurred from 1974 to 1977, and Plaintiffs cannot narrow those claims through their remand briefing to exclude all exposure occurring after 1972. *Id.*

The Court agrees that the Petition does not expressly impose the categorical pre-1972 limitation urged by Plaintiffs. Although Plaintiffs now characterize their claims against Boland as limited to asbestos exposure sustained while Decedent personally performed ship-repair work before approximately 1972, the language of the Petition itself alleges asbestos exposure over a period extending through 1979 and specifically identifies Boland's shipyard as one location at which Decedent was exposed. The plain terms of the Petition allege that Decedent "was exposed to injurious levels of asbestos directly and as a bystander as an IBEW Local 130 electrician *from 1957 through 1979*" and that he "worked for Gulf-Best Electric, Inc. and its predecessors from 1957 until his retirement in 1994." R. Doc. 1-1, p. 9 (emphasis added). The Petition further specifies that, while working for Gulf-Best, Decedent "was exposed to asbestos during ship repair work at the Buck Kreihs, *Boland*, and Dixie ship repair yards" and that he was subcontracted by these defendants "to perform electrical ship repair work at various wharves in New Orleans and on various ship lines." *Id.* at pp. 9-10 (emphasis added). It was at these sites that "Decedent was exposed to asbestos while working with and around asbestos-containing products and equipment, and/or while in the vicinity of others using and/or handling asbestos and/or asbestos-containing products at these facilities, which released injurious levels of asbestos-containing dust all of which Decedent was exposed to and breathed." *Id.* at p. 10. Thus, the Petition plainly alleges that Decedent was exposed to asbestos while working as an electrician at several job sites between the years 1957 and 1979 and specifically identifies Boland's shipyard as one of the locations at which that exposure occurred. Moreover, the Petition lacks any allegation that Decedent's alleged exposure at Boland ceased when he transitioned from working with tools to an office or supervisory position. Nor does it otherwise exclude the 1974 to 1977 period during which Boland performed the KING work.

The Court is unconvinced by Plaintiffs' argument that the language of the operative Petition clearly limits their claims to Decedent's asbestos exposures sustained while working as an electrician before 1972. *See* R. Doc. 24, pp. 1-10. Accepting Plaintiffs' premise would require the Court to place more weight on the phrase "as an IBEW Local 130 electrician" than "from 1957 through 1979." Additionally, the evidence cited by Plaintiffs does not compel a different interpretation of the Petition. While Pregeant testified that he believes Decedent transitioned to an office position "in the early '70s" and was "definitely in the office" when the KING project began, R. Doc. 6-3, p. 14, he also testified that Decedent continued to visit Boland's shipyard and recalled seeing Decedent aboard the USS KING while work was ongoing, *id.* at pp. 14, 17.[6] Furthermore, Decedent's own affidavit states that he conducted "marine type electrical work" "on the riverfront" "throughout the 1970s" and that he "did not work in chemical plants or on the riverfront anymore after 1982, when [he] became a superintendent for Gulf-Best and worked strictly in the office." R. Doc. 6-7, pp. 1, 3. Accordingly, neither the Petition nor the jurisdictional evidence before the Court establishes an undisputed pre-1972 endpoint for Decedent's alleged exposure at Boland.[7]

[6] Although Pregeant described the number of times Decedent went aboard the USS KING to be "minimal" and stated that he did not remember seeing Decedent in the engine room on the Vessel, R. Doc. 6-3, p. 17, those limitations do not negate the broader allegations of the Petition or the other jurisdictional evidence placing Decedent at Boland and aboard the USS KING during the relevant period. Taken together, the Petition and jurisdictional evidence demonstrate that the claims reasonably encompass at least a portion of the period during which Boland performed work on the USS KING.

[7] Paragraph 11 of the Petition contains a general disclaimer of "any cause of action or recovery for injuries caused by any exposure to asbestos dust that occurred in, or on the grounds of, a federal enclave" or "caused by any conduct, action, acts or omissions of any and all federal officers, or committed at the direction of an officer of the United States Government." R. Doc. 1-1, p. 9. While neither party addresses this provision in the briefing on remand, the Court notes that other sections in this district have distinguished between specific disclaimers relinquishing an identifiable factual category of claims and generalized disclaimers framed in terms of federal officer jurisdiction. *Compare BonDurant v. 3M Co.*, No. CV 19-10693, 2019 WL 3214288, at *4 (E.D. La. July 17, 2019) (finding "boilerplate" disclaimer "insufficient to justify remand"), and *Boudreaux v. Bossier*, No. CV 19-12355, 2019 WL 11235896, at *2 n.6 (E.D. La. Oct. 25, 2019) (same), *with Hayden v. 3M Co.*, No. CIV.A. 15-2275, 2015 WL 4730741, at *3-5 (E.D. La. Aug. 10, 2015) (enforcing disclaimer containing similar federal-enclave and federal-officer language where petition additionally disclaimed all asbestos exposure during the plaintiff's Navy service, *the sole factual basis for removal*, and plaintiffs reaffirmed that limitation in their remand motion). Unlike the disclaimer in *Hayden*, Plaintiffs' disclaimer in this case does not expressly disclaim exposure aboard the USS KING or otherwise identify the 1974 to 1977 period as outside the scope of their claims.

Boland additionally relies on the expert report of Dr. Brent Staggs, who opines that Decedent experienced "significant asbestos exposures . . . over his working lifetime" and relies, in part, upon Decedent's affidavit, in which he describes performing "marine type electrical work" on the riverfront "throughout the 1970s" and states that he "did not work in chemical plants or on the riverfront anymore after 1982, when [he] became a superintendent for Gulf-Best and worked strictly in the office." R. Doc. 29, pp. 1-2; R. Doc. 6-7, pp. 1-3. Although Dr. Staggs's report does not independently establish that Decedent was exposed to asbestos aboard the KING, it further undermines Plaintiffs' contention that the jurisdictional record establishes a categorical pre-1972 endpoint for Decedent's alleged workplace asbestos exposures.

Plaintiffs are correct as a general matter in asserting that Decedent's continued employment at Boland in an office position after 1972 would not, standing alone, "somehow expand the scope of Plaintiffs' claims against Boland." R. Doc. 24, p. 4. However, it is the Petition's repeated assertion that Decedent's exposures occurred "from 1957 through 1979," *see* R. Doc. 1-1, pp. 9-10, together with the jurisdictional evidence described above, that extends the pleaded exposure period beyond the 1974 start date of the KING project.

The Court therefore finds that Boland has plausibly alleged the requisite close relationship between the conduct challenged by Plaintiffs and its federally directed work. The Petition alleges asbestos exposure attributable to Boland during a period encompassing the 1974 to 1977 USS KING project, and the jurisdictional evidence places Decedent on the Vessel while ship-repair work was ongoing. As discussed above, that work was performed pursuant to detailed Navy specifications, oversight, inspection, and safety requirements. Although Plaintiffs dispute whether Decedent actually inhaled asbestos fibers aboard the KING, Boland need not establish exposure on the merits to satisfy this element of federal officer removal. Under *Chevron*'s broad

construction of the "relating to" requirement, the relationship between the challenged conduct and Boland's federally directed work is more than merely "tenuous, remote, or peripheral." *Chevron*, 146 S. Ct. at 1060-61. Accordingly, Boland has satisfied the final requirement for federal officer removal.

For these reasons, the Court concludes that Defendant has satisfied each of the four elements required to establish jurisdiction under the federal officer removal statute. Thus, the Court must DENY Plaintiffs' Motion to Remand.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Remand (R. Doc. 6) is **DENIED**.

New Orleans, Louisiana, this 3rd day of September 2026.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE